UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BAIN, RICHARD SKRZELA,
MAIME ALLEN, SCOTT ANDERS, WAYNE
ANDERSON, MICHAEL ANDREWS,
KENNETH ANTHONY, BERTHA ARRINGTON,
DONALD BECK, NORMA BLADE, DAVID
BOIGHT, LINDA BROWN, LAURIE
CANADY, DONALD DUMLER, GEORGE ESSY,         Case Number 06-11086
MARILYN FLOWERS, LYNNE GLOVER,              Honorable David M. Lawson
DEBORAH GOULETTE, DAVID HAMILTON,
STELLA HARPER, WILLIAM HAZZARD,
DARLENE HODGE, LANA HOUSTON, STEVE
KEATON, RICHARD KELLY, VICTORIA KILGORE,
TIM KNORR, BAILEY LEWIS, VICKIE
LOCKREY, CHRISTINE MCGUIRE, TERRY
MORRISON, PATRICK MURPHY, LEON
PRATCHER, MARK RATZA, RANDY
RICHARDSON, SANDRA SCHULTZ, JANETTE
SPRING, LARRY STAFFORD, ERWIN STANLEY,
ROBIN STAYTON, ELTON STORY, BECKY SWITZER,
DUANE SWITZER, MARK SYTEK, LARRY
SZCZEPANIK, VIOLET VIDA, DALE VINCENT,
DAVID VOIGHT, JACQUELYN WASKOSKI,
ROLEDA WEST, JACQUE WHITING, HARLAND
WICKAM, TERRANCE WILSON,

        Plaintiffs,

v.

GENERAL MOTORS CORPORATION, UNITED
AUTOMOBILE, AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA LOCAL 651,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS**

The plaintiffs, all employees or former employees of defendant General Motors Corporation's "Flint East" plant and members of the United Auto Workers's Local 651 (the

"Union"), filed a complaint alleging a violation of a collective bargaining agreement and breach of the Union's duty of fair representation, and they seek an adjustment of their seniority status. They all contend that actions taken by General Motors in the late 1980s and early 1990s violated the then-existing CBA provisions dealing with accrual of seniority and priority for recall after layoff, resulting in their loss of seniority and the privileges that go along with it. The defendants each have filed a motion to dismiss contending that the claims are barred by the applicable statute of limitations. The Court heard argument on the motions on November 16, 2006. The Court now finds that the plaintiffs' claims were filed out of time, and therefore the Court will grant the motions and dismiss the action.

I.

On March 15, 2006, the plaintiffs filed their complaint in this case asserting claims for breach of contract and breach of the duty of fair representation under section 301 of the Labor Management Relations Act. 29 U.S.C. § 185. The plaintiffs also seek class certification. The plaintiffs allege that they were all hired by General Motors in 1985 and employed at General Motors's "Flint East" facility. They state that after acquiring at least one year of seniority, they were laid off in late 1986. Compl. at ¶ 11. In late 1991 and early 1992, the plaintiffs were recalled to work at the Flint East plant. *Id.* at ¶ 13. For purposes of recall to employment, General Motors considered the plaintiffs to have "lost their seniority time for time" because they were laid off for a period of time greater than that for which they were employed. *Id.* at ¶ 12. The complaint states that as a result, the plaintiffs were given plant seniority dates that allocated credit only for the term of their previous employment instead of crediting the time during layoff toward seniority; that action

"resulted in Plaintiffs' plant and corporate seniority dates ranging between late 1989 and early 1991." *Id.* at ¶ 14.

The plaintiffs further allege, and the defendants apparently agree, that the CBA affecting the plaintiffs' rights at the time of the 1986 layoff was the 1984-1987 CBA. Included in that CBA was a provision entitled "Appendix K: Memorandum of Understanding, Job Opportunity Bank - Security (Jobs) Program." *Id.* at ¶ 18. According to the plaintiffs, the Jobs Program applies to all employees with one or more years of seniority. *Id.* at ¶ 19. They contend that when layoffs occur due to "technological changes, when work is outsourced to another location, when there are negotiated productivity improvements, and when there is a transfer of work to another location," affected workers must be placed in the Jobs Bank instead of being laid off, and seniority should continue to accrue. *Id.* at ¶¶ 20-21.

It appears that one of the primary purposes of "plant seniority" is to ensue that employees with lesser seniority are laid off before employees with greater seniority. *Id.* at ¶ 15. Similarly, an important feature of "corporate seniority" relates to retirement benefits: the greater the corporate seniority, the higher the monthly benefits. *Id.* at ¶ 16. In addition, laid-off employees with greater seniority have preference for recall when jobs become available. The plaintiffs allege that General Motors breached the CBA when it failed to place the plaintiffs into the Jobs Bank. Had this occurred, they contend, they would have continued to acquire plant and corporate seniority. *Id.* at ¶ 36. The plaintiffs allege that the consequences of miscalculating their seniority dates include greater vulnerability to layoffs "today or in the foreseeable future"; General Motors was able to hire new employees at the Flint East facility during the plaintiffs' layoff period, which amounted to a violation of the preferential recall rights set forth in the CBA; and General Motors could hire

individuals from other General Motors facilities as employees at the Flint East plant. *Id.* at ¶¶ 38-41.

The plaintiffs allege in their complaint that the CBA allows for the correction of seniority calculations at any time prior to retirement and "does not require that an employee seeking correction of his or her seniority dates file a grievance prior to seeking that correction." *Id.* at ¶¶ 22-23. Nonetheless, according to the allegations, the plaintiffs were aware of the dispute over their seniority several years ago, inasmuch as they allege that "[s]ince returning to work in the early 1990s Plaintiffs have been unable to resolve their claim for additional seniority credits." *Id.* at ¶ 31. They appear to have attempted to enlist their Union's assistance, but they contend that UAW Local 651: (1) "allowed GM to hire new hires at its Flint East facility during the time Plaintiffs were laid off"; (2) "allowed GM to hire GM employees from other GM facilities prior to recalling Plaintiffs from layoff"; (3) "failed to ensure that Plaintiffs were placed into the Jobs program at the time of Plaintiffs' layoff"; (4) "failed to properly investigate Plaintiffs' claims for correction of their seniority status"; and (5) "failed to properly represent Plaintiffs on their claims." *Id.* at ¶¶ 46-50.

Eventually, the plaintiffs "did file a grievance seeking correction of their plant and corporate seniority dates," *id.* at ¶ 24, although the complaint does not allege exactly when that was filed. General Motors attached a copy of the grievance as a motion exhibit; it is dated July 30, 2003. The plaintiffs state that on September 8, 2005, their grievance was denied via letter signed by a representative of General Motors and the UAW, and the plaintiffs received notice of the denial eight days later. *Id.* at ¶¶ 25-26. Although the UAW has an internal appeal procedure, the final of step of which "includes an appeal to the Public Review Board ('PRB')," *id.* at ¶¶ 27-28, the plaintiffs contend that resorting to that last contract remedy would be futile.

As noted earlier, the plaintiffs filed this lawsuit for breach of contract and breach of the duty of fair representation on March 15, 2006. The plaintiffs point out that they "do not pursue any claim for lost wages or benefits . . . . Their claim is solely for additional seniority rights." Compl. at 3. On July 31, 2006, defendant General Motors filed its motion to dismiss for failure to state a claim upon which relief can be granted. The Union followed suit on August 30, 2006 with its own motion.

II.

The defendants have styled their motions as motions to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Therefore, when deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted 'when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief.'" *New England Health Care Employees Pension Fund v. Ernst & Young LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (quoting *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975)); *see also Berry v. Chrysler Corp.*, 150 F.2d 1002, 1003 (6th Cir. 1945) (stating that "[t]he defense of the statute of limitations is covered by [Rule 12(b)] (6), and therefore is properly raised by motion").

The Union suggests in its motion that the Court may consider its request to dismiss under Rule 56, and it has attached an affidavit attesting to certain facts relating to the grievance process. All parties have made reference to the CBA, and the plaintiffs refer directly to the CBA in their complaint. Although it is generally improper to consider matters outside of the pleadings on a motion to dismiss, that rule does not apply to documents referenced by the pleadings themselves that are central to the plaintiff's claim. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). In such cases, "'the defendant may submit an authentic copy [of the referenced document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment.'" *Ibid.* (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). Although the affidavit filed by the Union is not central to the plaintiffs' claim, the CBA and the grievance certainly are. The Court will not consider the affidavit, but it has reviewed and considered the grievance and the CBA, and it will decide the motions under Rule 12(b).

The defendants contend that the plaintiffs' complaint is untimely because the events that gave rise to their claims occurred at the latest in 1992 when the plaintiffs were recalled to the Flint East plant and given adjusted seniority dates; and the present lawsuit filed in 2006 was commenced well beyond the six-month period of limitation for hybrid section 301 cases. The plaintiffs, however, insist that since the CBA allows a worker to seek adjustment of seniority credits at any time prior to the date of retirement, the plaintiffs' claim does not become ripe until they actually sought the adjustment and were refused. The grievance filed in 2003, they claim, served to "toll" the statute of limitations until the grievance was denied in 2005. They say that they filed their complaint within six months of the denial. Responding to the plaintiffs' counter-argument, General

Motors argues that the grievance filed by the plaintiffs in 2003 cannot "toll" the statute of limitations because the breach of the CBA claim was already stale when the grievance was filed.

The filing of a grievance does not "toll" the statute of limitations in hybrid section 301 cases; however, it is relevant for determining when a claim accrues. As this Court has explained previously:

> The applicable statute of limitations for a hybrid section 301 action is six months. *DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 169 (1983). A claim under section 301 accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Noble v. Chrysler Motors Corp., Jeep Div.,* 32 F.3d 997, 1000 (6th Cir.1994) (citations and quotations omitted). However, the claims against the employer and the union in a hybrid action accrue simultaneously, and "'the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's *final action* or should have known of the employer's *final action,* whichever occurs later.'" *Robinson v. Central Brass Mfg. Co.,* 987 F.2d 1235, 1239 (6th Cir.1993) (quoting *Proudfoot v. Seafarer's International Union,* 779 F.2d 1558, 1559 (11th Cir.1986)) (emphasis added). *See also McCreedy v. Local Union No. 971, UAW,* 809 F.2d 1232, 1236 (6th Cir.), *reh'g denied,* 818 F.2d 6 (6th Cir.1987) (stating that a hybrid section 301 claim "accrues against the company when it accrues against the union"). Therefore, when assessing the timeliness of such a complaint, the court "must establish a single accrual date for [the hybrid] section 301 claim and then ascertain whether the plaintiff[] filed suit within six months of that date." *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 803 (6th Cir.1990).

*Ginderske v. Eaton Corp.*, 317 F. Supp. 2d 803, 810 (E.D. Mich. 2004).

Under the rationale set forth in *Ginderske*, the plaintiffs' claim cannot have accrued when General Motors allegedly breached the CBA by supposedly failing to place the plaintiffs in the Jobs Bank or hiring workers in violation of the priority rules because the plaintiffs had not yet sought Union help in remedying their complaint. Rather, the Court must determine when the Union took an action that can be considered "final" and constituted an unfair labor practice so as to put the plaintiffs on notice that the duty of fair representation was breached.

The filing and denial of a grievance itself is not determinative of when a hybrid action accrues, particularly when a plaintiff delays unreasonably in pursuing his contract remedies. Instead, "[t]he determination of the accrual date is an objective one: 'the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue.'" *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir. 1994) (quoting *Chrysler Workers Ass'n v. Chrysler Corp.,* 834 F.2d 573, 579 (6th Cir. 1987)).

The plaintiffs in *Noble*, like the plaintiffs here, brought an action challenging the defendant's determination of their plant seniority date after a grievance they filed was not pursued by their union local. The dispute arose in 1984, and the plaintiffs had complained about this seniority adjustment to their union steward. The steward attempted to resolve the dispute with other local members, and an agreement settling the dispute with the plaintiffs' co-workers was signed in November 1984, although the plaintiffs continued to press the issue through their union into 1988. Finally, that year a newly-elected union steward told the plaintiffs that he did not intend to pursue the matter because it was untimely, so the plaintiffs filed their own grievance in October 1990. The grievance was formally denied on December 19, 1991, and the union appeals committee affirmed the decision on May 29, 1992. The plaintiffs filed their federal lawsuit on June 15, 1992.

The court of appeals affirmed the dismissal of the case on statute of limitations grounds because the claim accrued when the union steward refused to process the grievance in 1988, and the lawsuit was not filed within six months of that date. The court held that filing the grievance did not revive the plaintiffs' complaints of unfair treatment by their union because the union's failure to file a grievance on the plaintiffs' behalf was not an unfair labor practice itself. It only could be

considered such in the context of the earlier activity, which had occurred outside the period of limitation. The court explained:

> Plaintiffs have alleged a breach of the union's duty of fair representation based upon its failure to pursue their seniority grievance. However, they have not alleged any union misconduct within the limitations period but rather have relied upon the union's inactivity in pursuing their grievance. As previously recognized, the latest date at which plaintiffs should have known of the union's breach was in 1988 when the union steward refused to pursue their claim. The union's failure to process the grievance after 1988, standing alone, did not constitute an unfair labor practice, but only became an unfair labor practice when viewed in conjunction with conduct that occurred outside the limitations period.

*Id.* at 1001.

In this case, the plaintiffs have acknowledged in their complaint that they have been attempting to resolve their seniority dispute "[s]ince returning to work in the early 1990s." Compl. at ¶ 31. There is no allegation that the union flatly refused to pursue a grievance at that time, but apparently a grievance was not necessary to correct the seniority dates, and the plaintiffs recite a litany of other complaints against their union local that amount to breaches of the duty of fair representation inconsistent with the plaintiffs' position on seniority credits, including allowance of new hires at the Flint East plant ahead of the plaintiffs; allowing General Motors to hire from other facilities; failing to protect the plaintiffs' Jobs Bank placement; failing to investigate and correct the plaintiffs' seniority status; and failing to represent the plaintiffs properly in mediating these disputes. These alleged breaches all occurred "in the early 1990s," according to the complaint. Taking as true the plaintiffs' allegation that no grievance was required to address these issues, the neglect or refusal of Local 651 to remedy these irregularities must be considered its final action, which occurred during that time period. The plaintiffs' federal court complaint would have been timely only if it had been filed within six months of that date. As in *Noble*, the 2003 grievance addressed an unfair

labor practice that took place outside the limitation period, irrespective of the contract provision that adjustments of seniority were allowed at any time before retirement.

In addition, the pendency of a grievance does not extend the accrual date of a section 301 hybrid claim unless the grievance process is "able to afford [Plaintiffs] *some* relief." *Garrish v. Int'l Union, United Auto, Aerospace & Agric. Implement Workers*, 417 F.3d 590, 594 (6th Cir. 2005) (internal quotations omitted) (alteration in original). When the internal contract remedies are completely futile, pursuit of a grievance will not delay the accrual of the claim, and the plaintiff cannot avail himself of the doctrine of equitable tolling. *Ibid.* (citing *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993)). In this case, the CBA provided that grievances must be filed promptly, stating that a "claim[] shall be valid for a period of not more than seven days prior to the date the grievance was first filed in writing," unless the employee could not have discovered the grounds for the claim, "in which case the claim shall be limited retroactively to a period of thirty days prior to the date the claim was first filed in writing." CBA at ¶ 48(1). In light of this provision in the CBA, the plaintiffs had no right to expect that a grievance filed in 2003 complaining about events and alleged breaches that occurred in the late 1980s and were left uncorrected by alleged union failures in the early 1990s would be regarded as anything but futile. Therefore, the Court will not regard the 2003 grievance as a "good faith [effort] to exhaust their internal union remedies before filing suit in federal district court." *Garrish*, 417 F.3d at 595.

### III.

Based on the allegations in the complaint, the Court finds that the plaintiffs claims accrued sometime in the early 1990s at the latest. The 2003 grievance was ineffectual to extend the accrual date for the claims or serve as a basis to support equitable tolling. Because the complaint alleging

a hybrid action under section 301 of the Labor Management Relations Act was not filed within six months of the date the plaintiffs' cause of action accrued, the claims are out of time.

Accordingly, it is **ORDERED** that the defendants' motions to dismiss [dkt #s 6 & 12] are **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 21, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means or first class U.S. mail on November 21, 2006.

s/Felicia M. Moses
FELICIA M. MOSES